UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WAYNE THOMPSON,

                                        Plaintiff,

                                                                9:09-CV-01038
v.                                                              (NAM/GHL)

BELLEVUE HOSPITAL, RIKERS ISLAND
FACILITY, DR. JOHN DOE, LESTER WRIGHT,
Department of Corrections Chief Medical Officer,
BRIAN FISCHER, Department of Corrections
Commissioner,  PEDRO DIAZ, Regional Medical
Director, DR. WHALEN, Regional Medical
Director

                                        Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

WAYNE THOMPSON, 06-A-4609
Plaintiff *pro se*
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HEIDELL, PITTONI, MURPHY                    PAUL STUART HABERMAN, ESQ.
        & BACH, L.L.P.
Counsel for City Defendants
99 Park Avenue
New York, New York 10016


HON. ERIC T. SCHNEIDERMAN                    DAVID L. COCHRAN,  ESQ.
Attorney General for the State of New York   Assistant Attorney General
Counsel for State Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Norman A. Mordue,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Wayne Thompson ("Plaintiff") alleges that Defendants violated his constitutional rights

by failing to operate on his shoulder.  (Dkt. No. 81.)  Currently pending before the Court are two

motions: (1) a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by

Defendants New York City Health and Hospitals Corporation (sued herein as Bellevue Hospital),

the City of New York (sued herein as The Department of Corrections NYC), and Rikers Island

("City Defendants")[1] (Dkt. No. 96); and (2) a motion for summary judgment pursuant to Federal

Rule of Civil Procedure 56 filed by Defendants Lester Wright, Brian Fischer, Pedro Diaz, and

Dr. Whalen ("State Defendants") (Dkt. Nos. 91, 119).  For the reasons that follow, I recommend

that both motions be granted.

## I.      FACTUAL AND PROCEDURAL SUMMARY

Plaintiff alleges that when he was a pretrial detainee in New York City in July 2004,

Defendant Doctor John Doe found that Plaintiff required surgery to repair a torn rotator cuff in

his right shoulder.  (Dkt. No. 81 at 1.[2]) However, Defendant Doe then "conspired with others

---

[1]      Counsel for the City Defendants does not represent Defendant Doctor John Doe, who has not yet been identified or served.  However, the City Defendants maintain that Defendant Doe should be dismissed for the same reasons applicable to the other City Defendants. (Dkt. No. 97 at 3 n.3.)

[2]      Page references in citations to the amended complaint refer to the page numbers assigned by the Court's electronic filing system.

within the NYC Department of Corrections and with the Bell[evue] Hospital medical department" to deny Plaintiff that surgery.  *Id*.  Plaintiff alleges that Defendant Doe told him he could not receive the surgery because he would not be able to receive appropriate physical therapy once he was transferred to Rikers Island.  *Id*.  Defendant Doe told Plaintiff that "if you win your criminal case you can come back to the Hospital and we will perform the surgery and if you are convicted you can take care of it when you get to prison."  *Id*. at 2.  In his opposition to the City Defendants' motion to dismiss, Plaintiff characterizes Defendant Doe's statements as "le[ading him] to believe that there existed a contractual agreement between the NYC and NYS Department of Corrections" under which "the state would obtain his medical records, take over the treatment and simply perform the recommended surgery."  (Dkt. No. 103 at 1-2.)

In July 2005, while Plaintiff was confined at Rikers Island, he dislocated his injured shoulder twice.  (Dkt. No. 81 at 2.)  Rikers Island medical staff put his shoulder back into place and he received a few sessions of physical therapy, but he was not taken back to Bellevue to see a doctor or have surgery.  *Id*.

On August 21, 2006, Plaintiff entered the New York State Department of Corrections and Community Supervision ("DOCCS") system.  (Dkt. No. 92 at 8 ¶5; N.Y. Dept. of Corr. & Cmty. Supervision Inmate Population Info. Search, http://nysdocslookup.docs.state.ny.us (last visited July 31, 2011.))  The amended complaint alleges that "[u]pon his initial medical screening during intake at the Down[s]tate Reception Center, Plaintiff s[ough]t treatment for his shoulder injury and was instructed by the doctor to bring his injury to the attention of the medical department once he arrived at his permanent facility.  When Plaintiff arrived at the Great Meadow Correctional Facility and was seen by the doctor, he brought his injury to the attention of the

doctor[,] requesting surgery and explained the history surrounding the injury and his efforts to have it repaired."  (Dkt. No. 81 at 3.)  The amended complaint does not describe the doctor's response.

In the summer of 2007, Plaintiff dislocated his shoulder again.  (Dkt. No. 92 at 8 ¶ 7.)  In his opposition to the motion to dismiss, Plaintiff states that he was not seen by a DOCCS doctor until this injury occurred and that he "[o]bviously . . . could not have learned that the state would not honor the City of New York's recommendation [regarding surgery] until he began receiving consultations."  (Dkt. No. 103 at 3.)

Thereafter, Plaintiff's shoulder was evaluated and the treating physician, Doctor Mitchell Rubinovich, twice recommended surgery.  (Dkt. No. 92 at 8 ¶ 8.)  The recommended shoulder surgery was denied by APS Healthcare, Inc., DOCCS' independent review company.[3]  (Dkt. No. 81 at 3; Dkt. No. 92 at 8 ¶8; Dkt. No. 92-1 at 6.)  Defendant Doctor Whalen, the Regional Medical Director, concurred with that decision.  (Dkt. No. 81 at 3; Dkt. No. 92-1 at 6.)

On July 21, 2009, Plaintiff filed a grievance in which he claimed that Dr. Rubinovich's evaluations indicated that he needed surgery and that the medical department at Great Meadow Correctional Facility was indifferent to his medical needs.  (Dkt. No. 92-1 at 2.)  On the same day, Plaintiff sent a letter to Defendant Brian Fischer, the Commissioner of DOCCS, suggesting that Defendant Fischer "take action to see to it that I receive the necessary surgery that I full well

---

[3]      APS Healthcare, Inc. is a privately held company that contracts with DOCS to review requests for specialty care.  Requests for surgery are electronically submitted from the facility providers to APS Healthcare for approval.  Requests may be approved, disapproved, or returned to the facility provider for further information.  If a request is disapproved, the facility provider may appeal to the Regional Medical Director.  *Phillips v. Wright*, No. 9:09-CV-1328, 2010 U.S. Dist. LEXIS 139859, at *3-4, 2010 WL 5565669, at *1-2 (N.D.N.Y. Aug. 11, 2010).

know that I need." *Id*. at 8.

On August 3, 2009, the Inmate Grievance Resolution Committee ("IGRC") denied Plaintiff's grievance.   (Dkt. No. 92-1 at 3; Dkt. No. 92 at 8 ¶10.) )

On or about August 5, 2009, Plaintiff appealed the IGRC's denial to the superintendent. (Dkt. No. 92 at 8 at ¶ 11.)  On the same date, Plaintiff received a letter from Defendant Lester Wright, Chief Medical Officer, responding to his July 21, 2009 letter to Defendant Fischer.  (Dkt. No. 92 at 8 ¶13; Dkt. No. 92-1 at 10.)  Defendant Wright stated that "[t]he Division of Health Services has investigated your concern and determined that the decision to have you pursue physical therapy prior to reconsidering shoulder surgery does not constitute a denial of medical attention . . . If the physical therapy is not effective, orthopedic surgery will be reconsidered." (Dkt. No. 92-1 at 10.)

The Superintendent did not respond to Plaintiff's grievance within twenty days as required by DOCCS' regulations.  The parties dispute what happened next.  Plaintiff asserts that he appealed to the Central Office Review Committee ("CORC") on August 25, 2009.  (Dkt. No. 92 at 8 ¶ 12; Dkt No. 92-1 at 14.)  Plaintiff has attached a copy of this appeal as an exhibit to his opposition to the State Defendants' motion for summary judgment.  (Dkt. No. 92-1 at 14.)  The State Defendants assert that Plaintiff never appealed to CORC.  Jeffery Hale, the Assistant Director of the Inmate Grievance Program, declares that Plaintiff has never appealed *any* medical issue to CORC.  (Dkt. No. 91-3 ¶¶ 4-5.)

Plaintiff declares that about one week after he appealed to CORC, he went to the IGRC office and inquired about the status of his grievance.  (Dkt. No. 92 at 9.)  Supervisor B. White told him that his grievance had been denied and that he would receive a copy in a few days.  *Id*.

5

Plaintiff declares that he "never received a copy of that denial." *Id.* at 2.

On September 11, 2009, the Superintendent issued an untimely response to Plaintiff's grievance. (Dkt. No. 92 at 8 ¶ 11; Dkt. No. 92-1 at 6.) The Superintendent denied the grievance. (Dkt. No. 92-1 at 6.) Plaintiff does not assert that he believed that this was a CORC response.

Plaintiff signed and mailed his original complaint in this action on the same day. (Dkt. No. 1.) He asserts that he did so because he had not received a copy of the CORC denial as promised by B. White but had "received my Central Office denial from Defendant Lester Wright, Chief Medical Officer/Associate Commissioner and member of the Central Office Resolution Committee . . . ."[4] (Dkt. No. 92 at 9.) The complaint was filed on September 14, 2009. (Dkt. No. 1.)

Plaintiff alleges that Defendants' "denial of medical treatment" has "result[ed] in wear and tear of the surrounding cartilage and tissues [and] prolonged suffering, both physical and emotional." (Dkt. No. 81 at 7.) Plaintiff seeks compensatory and punitive damages and an injunction "to prevent the violation from continuing." *Id.*

The City Defendants now move to dismiss Plaintiff's complaint. (Dkt. No. 96.) The State Defendants move for summary judgment, arguing that Plaintiff's complaint must be dismissed because he failed to exhaust his administrative remedies before filing this action. (Dkt. No. 91.) Plaintiff has opposed the motions.[5] (Dkt. Nos. 92, 103.) Both sets of Defendants

---

[4]    Plaintiff apparently refers to the letter Plaintiff received from Defendant Wright on August 5, 2009.

[5]    The State Defendants argue that Plaintiff's opposition is flawed because he did not file a response to Defendants' Statement of Material Facts. (Dkt. No. 118 at 1.) It is true that Plaintiff failed to comply with Local Rule 7.1(a)(3). The closest Plaintiff came to responding to Defendants' Rule 7.1 Statement was his submission of a document entitled "Affidavit in Support

have replied.  (Dkt. Nos. 110, 118.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[6] fact exists, the Court must resolve

---

of Opposition to NYS-Defendant's (sic) Motion for Partial Summary Judgment for Failure to Exhaust." (Dkt. No. 92 at 7.)  This document does not "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs," as required by Local Rule 7.1(a)(3).  However, in the interest of judicial efficiency and because the evidence in this case is not voluminous, I have performed an independent review of the record.

[6]    A fact is "material" only if it would have some effect on the outcome of the suit.  *Anderson*, 477 U.S. at 248.

7

all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).

**B.      Legal Standard Governing Motion to Dismiss for Failure to State a Claim**

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief."  *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements

8

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

## III.   CITY DEFENDANTS' MOTION TO DISMISS

### A.   Conspiracy Claim

Plaintiff alleges that Defendant Doe "conspired with others within the NYC Department of Corrections and with the Bell[evue] Hospital medical department to deny Plaintiff his . . . right to be treated for his serious medical injury." (Dkt. No. 81 at 1.)  The City Defendants argue that the amended complaint fails to state a claim for conspiracy because (1) it fails to allege that the City Defendants entered into an agreement to achieve an unlawful end; and (2) it does not allege that the City Defendants were motivated by racial or other discriminatory animus.  (Dkt. No. 97 at 14-16.)  Defendants are correct.

Federal civil rights conspiracy claims may arise under two statutes: 42 U.S.C. §§ 1983 and 1985.  "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted).  "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."  *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (quoting *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam)).  A mere allegation that defendants have violated a plaintiff's constitutional rights pursuant to a conspiracy is insufficient to state a claim. *Zembiec v. Cnty. of Monroe*, 766 F. Supp. 2d 484, 498 (W.D.N.Y. 2011).  "To survive a motion to dismiss, [a] plaintiff must include some facts in his

complaint tending to show that [the] defendants acted in a willful manner, culminating in an agreement, understanding or 'meeting of the minds,' that violated his rights . . . " *McLaurin v. New Rochelle Police Officers*, 368 F. Supp. 2d 289, 295 (S.D.N.Y. 2005) (punctuation omitted).

Here, as the City Defendants correctly note, the amended complaint does not allege any "meeting of the minds." Rather, it simply alleges that Defendant Doe "conspired with others within the NYC Department of Corrections and with the Bell[evue] Hospital medical department." (Dkt. No. 81 at 1.) The amended complaint includes no facts tending to show that there was any "meeting of the minds." Therefore, I recommend that the Court dismiss Plaintiff's § 1983 conspiracy claim.

To state a cause of action for conspiracy under 42 U.S.C. § 1985(3), "a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). The conspiracy must "be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus . . ." *Id*. Here, as discussed above, Plaintiff has not sufficiently alleged that a conspiracy existed. Even if he had, the amended complaint does not allege that Plaintiff is a member of any protected class[7] or that the City Defendants were motivated by class-based or invidious animus. Therefore, I recommend that the Court dismiss Plaintiff's §1985 conspiracy claim.

---

[7]     "[P]risoners are not a suspect class." *Benjamin v. Jacobson*, 172 F.3d 144, 165 (2d Cir. 1999).

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).  Of course, an opportunity to amend is not required where the plaintiff has already amended the complaint. *See Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).  In addition, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco*, 222 F.3d at 112 (citation omitted).  Here, Plaintiff has already amended his complaint once.  However, there is a possibility that he could amend his complaint to state a conspiracy claim.  Therefore, I recommend that the Court grant leave to amend.

### B.  Fraudulent Misrepresentation Claim

Construed broadly, Plaintiff's complaint may assert a fraudulent misrepresentation claim against Defendant Doe.  The City Defendants have not addressed this claim.  I recommend that the Court *sua sponte* dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2).

To state a claim for fraudulent misrepresentation under New York law, "a plaintiff must show that (1) the defendant made a material false misrepresentation; (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."[8] *Eternity Global Master Fund Ltd. v.*

---

[8]      Moreover, under Federal Rule of Civil Procedure 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud or mistake."  Thus, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2)

*Morgan Guar. Trust Co.*, 375 F.3d 168, 186-87 (2d Cir. 2004) (quoting *Banque Arabe et*

*Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)).

The amended complaint fails to state a claim for fraudulent misrepresentation.  The

amended complaint does not allege facts plausibly suggesting that Defendant Doe made a

materially false representation.  The amended complaint alleges that Defendant Doe said "if you

win your criminal case you can come back to the Hospital and we will perform surgery and if you

are convicted you can take care of it when you get to prison."  (Dkt. No. 81 at 2.)  Plaintiff now

characterizes that statement as falsely representing that "there existed a contractual agreement

between the NYC and NYS Department of Corrections" under which "the state would obtain his

medical records, take over the treatment, and simply perform the recommended surgery."  (Dkt.

No. 103 at 1-2.)  However, the amended complaint does not allege that Defendant Doe said any

such thing.  Therefore, I recommend that the court *sua sponte* dismiss Plaintiff's fraudulent

misrepresentation claim against Defendant Doe.

I recommend that the Court grant Plaintiff leave to amend.  As with the conspiracy claim,

there is the slimmest of possibilities that Plaintiff could amend his complaint to plausibly suggest

that statements were made by Defendant Doe or some other representative of the City Defendants

that caused him to reasonably rely on a promise that "the state would obtain his medical records,

take over the treatment, and simply perform the recommended surgery."

### C.    Statute of Limitations

The City Defendants argue that Plaintiff's federal and state claims against them are barred

---

identify the speaker, (3)  state where and when the statements (or omissions) were made, and (4)
explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund*, 375
F.3d at 187 (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)).

by the applicable statutes of limitations.  (Dkt. No. 97 at 5-12.)  The City Defendants are correct.

The statute of limitations is an affirmative defense.  *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010).  "An affirmative defense may be raised by a pre-answer motion to dismiss [for failure to state a claim] under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *Staehr v. Hartford Fin. Serv. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008).  When filing a motion to dismiss for failure to state a claim rather than a motion for summary judgment, the defendant "must accept the more stringent standard applicable to this procedural route."  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

In *McKenna*, the Second Circuit stated that under this "more stringent" standard a motion to dismiss can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Id*.  However, this pleading standard has undergone a shift in the seven years since *McKenna* was decided.  The standard cited by the *McKenna* court was articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In 2007, the Supreme Court "retired" that standard.  *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1944.

As discussed above in Section II, the standard articulated in *Twombly* and *Iabal* is that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570) (emphasis added).  Thus, under the *Twombly/Iqbal* standard, a motion to dismiss "cannot be granted based on an affirmative defense when the plaintiff's recovery is . . . plausible . . . under the facts taken from the face of the complaint."  *Brownmark Films LLC v. Comedy Partners*, ___ F. Supp. 2d

13

___, 2011 U.S. Dist. LEXIS 72684, at * 16, 2011 WL 2648600, at *5 (E.D. Wis. Jul. 6, 2011).[9]

*See also St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 163 (E.D.N.Y. 2010) (when considering

a motion to dismiss for failure to state a claim as barred by the statute of limitations "the court

looks to the latest accrual dates . . . *reasonably suggested* by the facts alleged in the Complaint.")

(emphasis added).

### 1.   Federal Claims Against the City Defendants

Plaintiff asserts federal civil rights claims against the City Defendants pursuant to 42

U.S.C. § 1983.  (Dkt. No. 81 at 2, 6.)  Claims arising under 42 U.S.C. § 1983 are governed by

state statutes of limitations.  *Wilson v. Garcia*, 471 U.S. 261, 266-267 (1985).  In New York,

such claims are governed by the general three-year limitations period governing personal injury

claims.  *Owens v. Okure*, 488 U.S. 235, 251 (1989).  Accrual of the claim, however, is a question

of federal law.  *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).  Under federal law,

generally, a claim arising under 42 U.S.C. § 1983 "accrues" when the plaintiff "knows or has

reason to know of the injury which is the basis of his action."  *Pearl v. City of Long Island

Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

Here, "the injury which is the basis" of Plaintiff's claims against the City Defendants is

their failure to perform shoulder surgery on Plaintiff in 2004 and 2005.[10] (Dkt. No. 81 at 1-2.)  In

the amended complaint, Plaintiff alleges that he "did not learn of the [City Defendants'] violation

---

[9]       The Court will provide Plaintiff with a copy of this unpublished decision in
accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

[10]      As discussed above, Plaintiff has failed to state a claim for conspiracy or
fraudulent misrepresentation against the City Defendants.  Thus, I will not consider either of
those claims as the basis of Plaintiff's injury for statute of limitations purposes.

until it was repeated by the [State] Defendants in the very same manner, to a fault." *Id.* at 3.  In

his opposition to the motion to dismiss, Plaintiff states that he "obviously . . . could not have

learned that the state would not honor the City of New York's recommendation until he began

receiving consultations" in the summer of 2007.  (Dkt. No. 103 at 3.)

Plaintiff's allegation that his federal claims against the City Defendants did not accrue

until 2007 is not plausible.  He learned of the alleged City policies preventing inmates from

receiving surgery in 2004, when Defendant Doe told him that he would not be able to receive

appropriate physical therapy at Rikers Island.  (Dkt. No. 81 at 1.)  At the very latest, he knew that

the City Defendants would not provide him with surgery on August 21, 2006, when he

transferred into state custody.  Thus, Plaintiff's claims against the City Defendants accrued on or

before August 21, 2006, and the statute of limitations expired three years later, on August 21,

2009.  Plaintiff did not sign and mail his complaint in this action until September 11, 2009.  (Dkt.

No. 1.)  Therefore, unless some exception applies, his claims against the City Defendants are

barred by the statute of limitations.

Plaintiff asserts in his complaint that his claims against the City Defendants are not time-

barred because the continuing violation doctrine applies.  (Dkt. No. 81 at 2-3.)  Specifically,

Plaintiff asserts that they City Defendants "deliberately instituted . . . an effort to deprive a class

of citizens [of] a protected right [and] have displayed their [d]eliberate [i]ndifference [] during

the relevant time limitation period . . . through [] their repeated examples of willful negligent

acts, which disclose a pattern of conduct of denying prisoners meaningful medical treatment

through their policymaking decisions, intended to defraud the state[']s taxpayers." *Id.* at 2.

Plaintiff's argument is without merit.

15

"The continuing violation doctrine is an exception to the normal knew-or-should-have-known accrual date.  When the plaintiff brings a Section 1983 claim challenging a discriminatory policy, commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (citations and punctuation omitted).  The Second Circuit has held that "the continuing violation doctrine can apply to . . . claims of medical indifference brought under 42 U.S.C. § 1983 when the plaintiff shows an ongoing policy of deliberate indifference to *his or her* serious medical needs and some acts in furtherance of the policy within the relevant statute of limitations period."  *Id*. at 179 (emphasis added).  Courts "in the Second Circuit have been loath to apply the continuing violation doctrine absent a showing of compelling circumstances."  *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 464 n.14 (S.D.N.Y. 2011) (quoting *Trinidad v. N.Y.C. Dept. of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)) (punctuation omitted).

Here, Plaintiff alleges that the City Defendants maintained an ongoing policy of "depriv[ing] a class of citizens [of] a protected right . . . during the relevant time limitation period . . ."  (Dkt. No. 81 at 2.)  However, Plaintiff does not allege that the City Defendants were deliberately indifferent to *his* serious medical needs within the statute of limitations period.  He alleges, rather, that the allegedly unconstitutional policies may have affected *other* individuals within the three-year period before he filed his complaint.

Moreover, it is not enough that Plaintiff claims that the *State* Defendants violated his rights during the statutory period.  *Shomo* illustrates this point.  In *Shomo*, the plaintiff, who suffered right arm paralysis and limited use of his left arm, alleged that DOCCS medical personnel and security staff repeatedly refused to follow orders to assist him with his activities of

daily living, transfer him to special housing, or administer specific treatment.  *Shomo*, 579 F.3d at 179-80.  The defendants moved to dismiss the complaint on statute of limitations grounds because the conduct of which the plaintiff complained had occurred more than three years before the filing of the complaint.  *Id*. at 180.  The district court granted the motion, granting leave to amend as to some defendants and denying leave to amend as to others.  *Id*. at 182.  Among the defendants dismissed with prejudice were Dr. Singh and Physician Assistant Wright.  *Id*. at 183.  The Second Circuit affirmed the district court's decision to dismiss Dr. Singh and Physician Assistant Wright with prejudice, finding that "[t]here is no allegation that . . . [the plaintiff] had further contact with Dr. Singh" within the statute of limitations period and that "[a]bsent any allegations of wrongful acts that could relate to conduct within the statutory time period, Shomo's claim against Physician Assistant Wright was also properly dismissed without leave to amend." *Id*. at 184.

The Second Circuit's treatment of the claims against Dr. Singh and Physician Assistant Wright shows that it is not enough to simply allege that *someone* committed a wrongful act within the statute of limitations period.  Rather, a plaintiff hoping to invoke the continuing violation doctrine must allege that *the defendant* committed a wrongful act within the statute of limitations period.  As another district court has cogently observed, "[t]he Second Circuit's decision to affirm the dismissal of the claims against Dr. Singh and the physician assistant made clear that in order for the continuing violation doctrine to apply, plaintiff needed to show that *those specific individuals* committed at least one wrongful act within the statutory time period." *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 350 (S.D.N.Y. 2009) (emphasis added).

Therefore, I find that the continuing violation doctrine does not save Plaintiff's claims

against the City Defendants.

In his opposition to the motion to dismiss, Plaintiff argues that his claims against the City Defendants are saved by the doctrine of equitable estoppel. (Dkt. No. 103 at 1-5.)  Plaintiff's argument is without merit.

In district courts within New York, the doctrine of equitable estoppel tolls the statute of limitations where "the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007).  The burden is on the plaintiff to show that "the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational." *Id*. (punctuation omitted).  "If a plaintiff cannot articulate any acts by defendants that prevented him from timely commencing suit," he has failed to meet his burden.  *Id*. (punctuation omitted).

Plaintiff's equitable estoppel argument relies on Defendant Doe's statement that "if you win your criminal case you can come back to the Hospital and we will perform the surgery and if you are convicted you can take care of it when you get to prison." (Dkt. No. 81 at 2.)  Plaintiff characterizes this as a promise that the state would definitely provide him with surgery. Accordingly, Plaintiff argues that the City Defendants "misled [him] into believing that . . . upon their recommendation he would rec[ei]ve the necessary surgery needed to repair his injury once he was transferred into state custody." (Dkt. No. 103 at 2.)  He explains further that he "could not have learned that the state would not honor the City of New York's recommendation until he began receiving consultations," which did not occur until the summer of 2007.  *Id*. at 3.  He concludes that the City Defendants "misrepresented the material facts to the Plaintiff, in order to

18

dec[ei]ve him and have him believe that the only way he could rec[ei]ve the surgery that he needed was to wait until he was transferred into state custody." *Id*. at 5.  As discussed above in Section III(B), these assertions are not sufficient to plausibly allege that the City Defendants engaged in fraud, misrepresentation, or deception.  Therefore, I recommend that the Court dismiss Plaintiff's federal claims against the City Defendants because they are barred by the statute of limitations.

I recommend that the Court grant leave to amend.  Although it appears unlikely, Plaintiff could perhaps amend his complaint to add facts plausibly alleging that the continuing violation doctrine or the doctrine of equitable estoppel applies.

2.      State Claims Against the City Defendants

The City Defendants argue that to the extent that Plaintiff is asserting any state law causes of action against them, such as medical negligence, those claims are also barred by the statute of limitations.  (Dkt. No. 97 at 10-12.)  Defendants are correct.

New York General Municipal Law §§ 50-i and 50-e require plaintiffs suing cities or their employees to file a notice of claim within ninety days and commence the action within one year and ninety days of the events giving rise to the claim.  *Lieber v. Village of Spring Valley*, 40 F. Supp. 2d 525, 533 (S.D.N.Y. 1999) (collecting cases).  Here, Plaintiff did not commence this action within one year and ninety days.  Therefore, I recommend that the Court dismiss any state claims that Plaintiff may be asserting against the City Defendants without leave to amend.

IV.    **STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The State Defendants move for summary judgment of Plaintiff's claims against them, arguing that Plaintiff failed to exhaust his administrative remedies before bringing this action.

(Dkt. No. 91-6 at 3-6.)  Defendants are correct.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  In New York state prisons, DOCCS has a well-established three-step inmate grievance program.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7 (2010).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances.  First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a) (2010).  A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id.* at (b)(1).  If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, and issues a written decision within two working days of the conclusion of the hearing.  *Id.* at (b)(2).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision.  If the grievance involves an

institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* at (c).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at (d).

Any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2010).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81 (2006).

Here, Plaintiff completed the first step of the grievance process when he received a response from the IGRC on August 3, 2009. (Dkt. No. 92-1 at 3.) He completed the second step by appealing the IGRC's decision to the Superintendent (Dkt. No. 92 at 8 ¶ 11) and waiting twenty days for a decision. He also completed the second step by receiving an untimely response from the Superintendent on September 11, 2009. (Dkt. No. 92-1 at 6.)

Plaintiff did not, however, complete the third step of the DOCCS inmate grievance process. The State Defendants assert that Plaintiff did not even begin the third step. Jeffery Hale, Assistant Director of the Inmate Grievance Program, declares that he searched Plaintiff's records and "found that . . . [Plaintiff] ha[d] not submitted administrative appeals [to CORC] from facility determinations . . . related to any medical issues at all." (Dkt. No. 91-3 ¶4.) Plaintiff, however, claims that he did submit an appeal to CORC and has provided the Court with

a copy of that appeal.  (Dkt. No. 92 at 8 ¶ 12; Dkt. No. 92-1 at 14.)

Even drawing all inferences in Plaintiff's favor and assuming that Plaintiff did, in fact, appeal to CORC, it is undisputed that Plaintiff never received a response from CORC.[11]  (Dkt. No. 92 at 1.)  A final decision by CORC is required in order to exhaust administrative remedies. *Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009).  Therefore, Plaintiff did not exhaust his administrative remedies.

Plaintiff's failure to exhaust, however, does not end the inquiry.  The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[12]  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted).  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted).  Third, if the remedies were available and some of the

---

[11]    Plaintiff characterizes Defendant Wright's August 5, 2009, letter as a CORC response.  (Dkt. No. 92 at 15; Dkt. No. 92-1 at 9-10.)  That characterization is misplaced. Defendant Wright sent the letter to Plaintiff twenty days *before* Plaintiff appealed to CORC. Moreover, Defendant Wright's letter states clearly that it is being sent in response to Plaintiff's letter to Defendant Fischer.  The letter does not mention Plaintiff's grievance or refer to the grievance appeals process in any way.

[12]    The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81.  *Chavis v. Goord*, No. 07-4787-pr, 2009 U.S. App. LEXIS 13681, at *4, 2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

Here, as discussed above, an administrative remedy was available to Plaintiff.[13]  Plaintiff expressly stated that there was a prisoner grievance procedure at Great Meadow Correctional Facility through which he filed a grievance and appeals at each level.  (Dkt. No. 92 at 9.)  Thus, Plaintiff had available to him an administrative remedy which should have been pursued to completion before filing the instant action.

Second, Defendants are not estopped from asserting the exhaustion defense.  A defendant may be equitably estopped from raising the exhaustion defense if he or she engaged in conduct that hindered the plaintiff's ability to pursue his or her administrative remedies.  *Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir.2004) (district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison).  A prison official's refusal to accept or forward a prisoner's grievance is conduct that hinders a plaintiff's ability to pursue administrative remedies.  *Sandlin v. Poole*, 575 F.Supp.2d 484, 488 (W.D.N.Y.2008)  Here, Plaintiff alleges that B. White, the Inmate Grievance Supervisor, inhibited Plaintiff from

---

[13]        To be "available" for purposes of the PLRA, an administrative remedy must afford "the possibility of some relief for the action complained of."  *Booth v. Churner*, 532 U.S. 731, 738 (2001).  In addition, a court deciding this issue must apply an objective test and determine whether a similarly situated person of ordinary firmness would have deemed the administrative remedy available. *Hemphill*, 380 F.3d at 688.

exhausting his available administrative remedies.  However, B. White is not a named defendant.

There is no record of any named Defendant preventing Plaintiff from completing the grievance

process.

As for the third part of the inquiry, the existence of "special circumstances" justifying a

plaintiff's failure to exhaust administrative remedies "must be determined by looking at the

circumstances which might understandably lead  . . . uncounselled prisoners to fail to grieve in

the normally required way." *Giano v. Good*, 380 F.3d 670, 678 (2d Cir.2004).  Special

circumstances may exist due to a facility's "[f]ailure to provide grievance deposit boxes, denial

of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which

effectively rendered the grievance process unavailable to him."  *Bailey v. Fortier*, 2010 U.S. Dist.

LEXIS 108357, at *23-24, 2010 WL 4005258, at *7 (N.D.N.Y Aug. 30, 2010) (Peebles, Mag.)

(citing *Murray v. Palmer*, 2010 U.S. Dist Lexis 32014, at *39-40, 2010 WL 1235591, at *6

(N.D.N.Y. Mar. 31, 2010) (Suddaby, D.J.) (quoting *Sandlin v. Poole*, 575 F.Supp.2d 484, 488

(W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendants are estopped from

relying on exhaustion defense as 'special circumstances' excusing plaintiff's failure to

exhaust"))).[14]

Here, Plaintiff argues that B. White " intentionally s[ough]t to deprive [him] of [his] right

to exhaust the procedure by furnishing false information on official department documents and

by failing to log and file [his] formal grievance submitted to [the] Central Office"  (Dkt. No. 92

at 9.)  As noted above, Plaintiff has submitted a copy of a CORC appeal that he claims he filed,

_____

[14]        The Court will provide Plaintiff with a copy of these unpublished decisions in
accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

but that the State Defendants claim was never filed. Plaintiff also states that one week after he submitted the CORC appeal he inquired about its status and B. White told him "the grievance had been denied and that [he] would be receiving a copy of that denial within a couple of days." *Id*. Plaintiff has submitted additional evidence that DOCCS failed to properly log his CORC appeal - a letter from B. White stating that Plaintiff's grievance "was informally resolved by [Plaintiff]on 8/03/09." (Dkt. No. 92-1 at 12.) The record is clear, however, that the grievance was *not* informally resolved and that Plaintiff appealed the August 3, 2009, decision by the IGRC.

However, no error by DOCCS caused Plaintiff to fail to grieve in the normally required way. I might reach a different conclusion if Plaintiff had waited in vain for a month or two for a CORC response before filing this lawsuit. However, he did not. Taking the evidence in the light most favorable to Plaintiff, he appealed to CORC on August 25, 2009. Under DOCCS regulations, CORC had thirty days to respond to Plaintiff's appeal. N.Y. Comp. Codes R. & Regs., tit. 7, § 701.6(g) (2010). Plaintiff signed and filed his complaint in this action less than thirty days after he submitted his appeal to CORC. He thus did not give CORC an opportunity to respond to his appeal before he proceeded to federal court. Such actions undermine one major purpose of the exhaustion requirement, which is to "provide prisons with a fair opportunity to correct their own errors." *Messa v. Goord*, ___ F.3d __, No. 10-1019-pr, 2011 U.S. Dist. LEXIS 15322, 2011 WL 3086827 (2d Cir. July 26, 2011) (quoting *Woodford*, 548 U.S. at 94) (punctuation omitted).[15] I might also reach a different conclusion if Plaintiff had argued that he

---

[15] Because one major purpose of the exhaustion requirement is to give prisons an opportunity to correct their own mistakes *before* a prisoner files suit, the Second Circuit has held that the PLRA requires dismissal of an action even where a prisoner shows that he received a

believed that the Superintendent's untimely response, which Plaintiff received after he appealed

to CORC, was a CORC response.  However, he admits that he never received a CORC denial.

(Dkt. No. 92 at 9.)  Therefore, I recommend that the Court dismiss Plaintiff's claims against the

State Defendants without prejudice.

   **ACCORDINGLY**, it is

   **RECOMMENDED** that the City Defendants' motion to dismiss (Dkt. No. 96) be

**GRANTED** with leave to amend; and it is further

   **RECOMMENDED** that the State Defendants' motion for summary judgment (Dkt. No.

91) be **GRANTED** without prejudice to refiling when Plaintiff has exhausted his administrative

remedies: and it is further:

   **RECOMMENDED** that Plaintiff motion for preliminary injunction (Dkt. No. 124) be

**DENIED AS MOOT**; and it is further;

   **ORDERED** that Defendants' request for an extension of time in which to respond to

Plaintiff's motion for preliminary injunction (Dkt. No. 129) is **GRANTED**.  The response

deadline is adjourned without date pending the District Court's action on this Report-

Recommendation; and it is further

   **ORDERED** that the Clerk provide Plaintiff with copies of *Brownmark Films LLC v.*

*Comedy Partners*, ___ F. Supp. 2d ___, 2011 U.S. Dist. LEXIS 72684, 2011 WL 2648600 (E.D.

Wis. Jul. 6, 2011); *Bailey v. Fortier*, 2010 U.S. Dist. LEXIS 108357, 2010 WL 4005258

(N.D.N.Y Aug. 30, 2010); and  *Murray v. Palmer*, 2010 U.S. Dist Lexis 32014, 2010 WL

---

CORC response after filing his lawsuit.  *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001),
*overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002).

1235591 (N.D.N.Y. Mar. 31, 2010) in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, *892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §* 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: August 28, 2011
       Syracuse, New York

George H. Lowe
United States Magistrate Judge

27